# Atlantic Refining Company, Appellant, *v.* Sylvester.

*Vendor and vendee—Sale of land—Incumbrances—Unopened streets—Contract—Alterations.*

1. An ordained street, although unopened, which the city authorities have declined to remove from the municipal plan, is an incumbrance within the meaning of an agreement to sell land clear of incumbrances.

2. Articles for the sale of land provided that the title should be clear of incumbrances. The agreement was signed by an agent of an un-

disclosed purchaser "under and subject to the approval of his action by his principal." After the agent had signed the seller inserted the words "except as to open or unopened streets." The agent in an action against himself by the seller to recover the purchase price of the land was called by the plaintiff as a witness and testified that he had never agreed to the exception in regard to the streets; that his principal had always said that the property would be worthless to him with the threat of the streets hanging over it, and had insisted that it must be delivered free of such incumbrances; and that the plaintiff had been so informed. *Held*, that the trial court was not in error in directing a verdict for the defendant.

Argued Jan. 18, 1911. Appeal, No. 155, Jan. T., 1910, by plaintiff from judgment of C. P. No. 2, Phila. Co., Dec. T., 1908, No. 2,018, on verdict for defendant in case of The Atlantic Refining Company v. Frederick Sylvester. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Assumpsit on written contract to recover price of real estate.

The contract sued on is outlined in the opinion of the Supreme Court; after the signature of the defendant appears the word "agent," but the name of his principal is not disclosed therein. The defendant was the only witness called by the plaintiff. In addition to his testimony referred to in the opinion, at the request of the plaintiff, he produced the correspondence concerning the transaction at issue, consisting of a series of letters and telegrams between the witness, the plaintiff, and its attorneys; also between the witness and John Baker, Jr., the man whom he represented, and Dongel Stoney, an attorney in fact for Baker. The witness testified that he had drawn and signed the contract and sent it to the plaintiff, that when returned to him it contained the interlineations referred to in the opinion; that he then told the plaintiff, "I will have to notify my principal of those changes." The correspondence shows that on October 8 the defendant telegraphed the plaintiff that the purchase had been approved by his principal, but that on October 10 he notified the

plaintiff by letter that on the eighth he had received a telegram from his principal to the effect that the title must be "clear and unrestricted," and that he had written to his principal "at large on the subject advising him of the details of the transaction." There was no evidence to show any change of position to the prejudice of the plaintiff between the time of the first and second notification from the defendant. On October 21, the defendant received a letter from Mr. Stoney, inclosing an approval of the agreement signed by him as attorney in fact for Mr. Baker, stating that Mr. Baker was absent and that he, Stoney, had signed the formal approval so that it might be returned to Philadelphia within the fourteen days but, "Should Mr. Baker have any objection to the document, as I have executed it, he will wire you, in which case you will, of course, follow his instructions." On October 17, Baker did wire to the defendant: "Purchase agreement subject to opened or unopened streets. Cannot use the property with streets through it. Satisfy yourself no streets before delivering approval." The defendant, "thereupon took up with counsel for the (plaintiff) company . . . . the question of trying to have those streets removed by applying to council in Chester for an ordinance to that effect;" but the efforts to have the streets removed were unsuccessful and the approval of the agreement was never delivered to the plaintiff. The correspondence shows that, pending the efforts to have the property relieved from the proposed streets, the defendant asked for and secured from the attorneys for the plaintiff the necessary papers and information to prepare for a settlement, and that he sent to such attorneys drafts of proposed resolutions to be passed by the plaintiff corporation, saying that he had no reason to doubt the intention of his principal to deliver his written approval of the agreement. The witness subsequently testified that he had written this because he had great confidence in his ability to convince Mr. Baker that, "the possibility of the actual opening of the plotted streets was very remote and not probable."

*Errors assigned* were (1) in instructing the jury to find for the defendant; (2–4) in refusing to admit in evidence certain letters and telegrams from Baker to the defendant, instructing the latter to make a deposit on the purchase when proper resolutions were passed and delivered by the·plaintiff company, which communications contained no reference to the objection on account of the proposed streets; (5, 6) in refusing to allow certain questions put to the defendant concerning the compensation which he was to receive, or had received, from his principal for services rendered in the transaction.

*Reynold D. Brown,* with him *Malcolm Lloyd, Jr.,* for appellant.

*John G. Johnson,* with him *James Wilson Bayard,* for appellee.

Opinion by Mr. Justice Moschzisker, May 1, 1911:

The Atlantic Refining Company brought this action against Frederick Sylvester to recover the purchase price of a piece of real estate. The contract sued upon is dated October 7, 1908; it is provided therein that the plaintiff agrees to sell and the defendant to purchase a certain tract of land in the borough of South Chester; the title to be "clear of encumbrance (except as to opened or unopened streets), and free from restrictions;" the deed to be executed "to the said Frederick Sylvester, agent, or to his principal," and "settlement to be made within sixty days." It is further provided: "This agreement is made and entered into by the said Frederick Sylvester, agent, under and subject to the approval of his action by his principal (within fourteen days from this date) signified by his written indorsement hereon, and the said Frederick Sylvester shall not be held responsible under this agreement in case of the refusal of his principal to affirm his action."

The words within the parentheses did not appear in

the contract as originally drawn and signed by the defendant; they were inserted by the plaintiff. This was not denied; but the plaintiff contended that the contract as altered was afterwards impliedly affirmed by the defendant and expressly approved within the fourteen days by his principal, Mr. Baker, acting through an attorney in fact, Mr. Stoney; or, at the least, that the actions of the defendant and his principal in relation to the contract were sufficient from which to find a waiver of the provision as to the incumbrances, so far as the streets were concerned. The defendant denied both of these contentions and asserted that he had never agreed to the exception in regard to the streets; that his principal had always said that the property would be worthless to him with the threat of the streets hanging over it, and had insisted that it must be delivered free of such incumbrance; and that the plaintiff had been so informed. The defendant likewise denied any individual liability under the contract. The learned trial judge gave binding instructions in his favor, which were sustained by the court below, and the plaintiff has appealed.

The suit was upon a written contract in which the plaintiff had made material alterations after its execution by the defendant. The latter never expressly assented to the changes or affirmed the contract as modified; and the question of such modifications does not appear to have gone beyond the negotiation stage. Taking the document as drawn before the interlineations, we have a written contract containing an express provision that the property must be clear of incumbrance, together with the fact that there were then four duly ordained streets liable to be opened over the tract of land in question, and the further fact that the authorities, on November 19, 1908, had "absolutely declined" to remove these streets from the municipal plan. Under these circumstances there could be no recovery on the contract. "The ordained street, though unopened, was an encumbrance upon the lot relieving the appellee from his agreement to purchase:"

Graybill v. Ruhl, 225 Pa. 417; Evans v. Taylor, 177 Pa. 286.

But the question remains, Was there error in refusing the additional evidence proffered by the plaintiff? Had it all been admitted, yet in view of the positive assertion by the defendant, a witness for the plaintiff, that he had never assented to the interlineations, and the absolute orders by Mr. Baker that the title must be "clear and unrestricted" and that the defendant before delivering his principal's approval was to satisfy himself of the land's being clear of the proposed streets, there would not have been sufficient proofs to justify the inference, or to sustain a finding, that the defendant or his principal had either waived any part of the requirement in respect to incumbrances or affirmed the contract as modified. Particularly is this so, when we consider that the approval of Mr. Baker was never delivered, and that the so-called approval by his attorney in fact was an especially restricted one, not to be delivered to the plaintiff unless assented to by Mr. Baker, which assent appears to have been withheld because of the presence of the streets. All of the correspondence admitted and offered was consistent with the fact that the defendant's principal always insisted upon the property's being free of the incumbrance of these streets; for, after Mr. Baker's prompt and repeated orders to that effect, and their communication to the plaintiff, it was not necessary to reiterate his stand in each subsequent letter.

Since it is impossible to deliver a title clear of the plotted streets, the plaintiff is out of court; hence it would serve no useful purpose to discuss or determine the other questions so ably presented by counsel.

We find no reversible error upon the record; the assignments are all dismissed, and the judgment is affirmed.