COURT OF CHANCERY
OF THE
STATE OF DELAWARE

CHRISTIAN DOUGLAS WRIGHT
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: February 6, 2026
Date Decided: February 12, 2026

Richard P. Rollo, Esquire
Travis S. Hunter, Esquire
Alexandra M. Ewing, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Margaret M. DiBianca, Esquire
DiBianca Law, LLC
1201 N. Orange Street, Suite 504
Wilmington, DE 19801

Re: *Kevin Leiske, et al. v. Robert Gregory Kidd, et al.*,
C.A. No. 2025-0426-CDW

Dear Counsel:

This letter resolves the parties' disputes regarding the terms of the Order Establishing Procedure for Payment of Advancement and Fees-on-Fees to Plaintiffs ("*Fitracks* Order").[1] Because the parties are familiar with the background of this litigation, I dispense with a recitation of facts. I am entering the *Fitracks* Order contemporaneously with the filing of this letter.

---

[1] *See* Dkt. 80 (plaintiffs' letter concerning proposed *Fitracks* order); Dkt. 81 (defendants' letter concerning proposed *Fitracks* order). The parties' respective proposed terms for the *Fitracks* Order are reflected in the marked proposed order submitted with their letters. *See* Dkt. 80, Ex. E; Dkt. 81, Ex. A. Paragraph references in this letter are to the paragraphs as they appear in the parties' proposed *Fitracks* order.

***Advancement for Plaintiffs' Defensive Fees and Expenses in the JAMS Arbitration (¶ 1 n.1).*** Vice Chancellor Will resolved this issue in her February 9, 2026 letter order in favor of plaintiffs,[2] so I adopt plaintiffs' proposed language for footnote 1 of the *Fitracks* Order.

***Jointly and Severally (¶¶ 1, 2).*** Defendants did not explain in their letter why I should strike the phrase "jointly and severally" from paragraphs 1 and 2 of the *Fitracks* Order, so they have waived it.[3] I note that "jointly and severally" appears to be unnecessary in light of paragraph 24's statement that all payment obligations under the *Fitracks* Order "shall be joint and several." In any event, the Indemnification Agreements impose obligations on multiple parties and use the term "jointly and severally" to describe those obligations,[4] so paragraphs 1 and 2 of the *Fitracks* Order will do the same.

***Incurred or To Be Incurred (¶¶ 1, 2).*** I reject defendants' proposal to strike the phrase "to be incurred" in paragraphs 1 and 2 of the *Fitracks*

---

[2] Dkt. 82.

[3] *E.g.*, *Emerald P'rs. v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[4] *See* Am. Compl. Exs. 1–3 at ¶¶ 1, 2, 3(c), 6(g). Paragraph 5 of the Indemnification Agreements, which sets forth defendants' advancement obligations, does not include the phrase "jointly and severally." Defendants do not argue, nor would I find, that the omission is evidence that the parties intended the advancement obligation to be several while the indemnification obligation to be joint and several.

Order.  As with "jointly and severally," defendants waived the issue by not raising it in their letter.[5]  But I would have rejected the proposal even if they had argued it.  A *Fitracks* order sets in place a process to govern payment of advancement going forward, that is, fees and expenses incurred to date and to be incurred in the future.[6]  Eliminating this language would introduce unnecessary ambiguity into the intended scope of the *Fitracks* Order.

 ***Successfully Prosecuting* (¶ 2).**  I reject defendants' proposal to add the phrase "successfully prosecuting" in paragraph 2 of the *Fitracks* Order because I think it is unnecessary in light of my adoption of defendants' proposed language for paragraph 23 below.  If plaintiffs are successful in whole or in part in presenting future applications for an award of disputed fees, they will be entitled to their reasonable fees and expenses.

 **"*Or Fees-on-Fees*" and "*Or the Advancement Action*" (¶¶ 10, 13).**  Plaintiffs argue these phrases in paragraphs 10 and 13 of the *Fitracks* Order are needed "to ensure that Demands can include Fees on Fees."[7]  While "or the Advancement Action" strikes me as unnecessary because the first whereas

---

[5] *See Emerald P'rs.*, 726 A.2d at 1224.

[6] A "Future Demand" to use the parties' chosen term.

[7] Dkt. 80 at 3.

clause of the *Fitracks* Order already defines fees and expenses incurred in connection with this "Advancement Action" as "Advanceable Claims," defendants do not, as far as I can tell, directly address either phrase in their letter submission, so I include them.

***Deadlines to Object to Demands and Make Payments*** (¶¶ **12, 14, 15, 17**). For future demands, 10 days to raise any objections and to make payments is both common in *Fitracks* orders in my experience and should be sufficient for defendants with monthly submissions. For the initial demand, 15 days is also common and should be sufficient here. Plaintiffs have waited long enough.

***Payment/Escrow Percent Threshold*** (¶ **15**). Fifty percent has been the standard threshold since the original *Fitracks* procedure was implemented[8] and I have seen it utilized even in cases where no claims have been excluded from advancement and there are no difficult allocation issues. Plaintiffs' suggestion that there is something nefarious about defendants' proposal to use the standard threshold percentage is overwrought. If defendants do try to use

---

[8] *See Danenberg v. Fitracks, Inc.*, 58 A.2d 991, 1003 (Del. Ch. 2012).

that threshold in an abusive manner, plaintiffs have the ability to seek relief from the court.

***Rule 88 Applications* (¶ 20).** I decline the parties' proposal to permit the submission of fee disputes more frequently than quarterly, at either monetary threshold. It is not a standard provision insofar as my experience with *Fitracks* orders is concerned,[9] and it is unrealistic to expect the court to deal with these on a monthly basis as starting point. I am willing to reconsider this for good cause shown, but we will start with quarterly submissions.

***Cost Shifting for Disputed Amounts* (¶ 23).** I adopt defendants' proposed language for paragraph 23. I continue to believe, as I stated in *dicta* during my January 2 bench ruling,[10] that an unconditional fees-on-fees provision like Section 7(d) in the Indemnification Agreements is not impermissible for all parties in all circumstances, given Delaware's status as

---

[9] As with the 50% payment/escrow threshold, quarterly submission of fee disputes was part of the original *Fitracks* procedure. *See id.*

[10] *See* Tr. of Jan. 2, 2026 Tel. Rpt. of the Magistrate on Cross-Mot. for Summ. J. 30–31, Dkt. 67. My statement was *dicta* then because it was not necessary to my ruling. *Cf. In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013) (explaining that *dicta* includes "judicial statements on issues that would have no effect on the outcome of [the] case"), *aff'd sub nom., Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014). Vice Chancellor Will agreed my statement was *dicta*. *See Leiske v. Kidd*, 2026 WL 265493, at *5 (Del. Ch. Feb. 2, 2026).

a "contractarian state that holds parties' freedom of contract in high regard."[11]

But this case is not an appropriate vehicle to explore that view because the parties negotiated for a different standard, one that I did not have in mind when I delivered my bench ruling.

Under Section 6 of the Indemnification Agreements, the parties agreed that "[i]t is the intent of this [Indemnification] Agreement to secure for Indemnitee rights of indemnity that are as favorable as may be permitted under the [Delaware General Corporation Law] and public policy of the State of Delaware."[12]  Our court has held that unconditional fees-on-fees provisions are incompatible with the Delaware General Corporation Law and public policy (at least public policy applicable to Delaware corporations).  Having chosen to tie themselves to this standard, I hold the parties to it.

In *Levy v. HLI Operating Company*,[13] an indemnification agreement contained an unconditional fees-on-fees provision similar to Section 7(d)

---

[11] *See, e.g.*, *Sunder Energy, LLC v. Jackson*, 332 A.2d 472, 487 (Del. 2024). Unfortunately, during my bench ruling I mentioned only the principle of contractual freedom under the LLC Act, *see* 6 *Del. C.* § 18-1101(b), even though the Indemnification Agreements are not limited liability company agreements, and no Delaware limited liability company is a party to them.

[12] Am. Compl. Exs. 1–3, § 6.

[13] 924 A.2d 210 (Del. Ch. 2007).

here, requiring the indemnitor to advance "any and all expenses (including attorneys' fees)" incurred by the indemnitee "in connection with any action brought by the [i]ndemnitee for . . . advancement . . . regardless of whether the [i]ndemnitee ultimately is determined to be entitled to such . . . advancement[.]" 924 A.2d 210, 217 (Del. Ch. 2007). Vice Chancellor Lamb held such provisions are invalid under Delaware law, at least as they apply to Delaware corporations and the Delaware General Corporation Law.

The court first explained such provisions are inconsistent with relevant precedent:

> A contractual agreement for indemnification of fees on fees, then, cannot overstep this bright-line legal boundary. A party must succeed (at least to some extent) on its underlying indemnification action to have a legally cognizable claim for monies expended in forcing its indemnitor to make it whole. Because a Delaware corporation cannot take actions which our law does not countenance, a contract provision which mandates indemnification for fees on fees in unsuccessful litigation is invalid since it flouts the lucid precepts of *Cochran* and *Fasciana*.

*Id.* at 225–26 (discussing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555 (Del. 2002) and *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178 (Del. Ch. 2003)). The court then explained they are also inconsistent with the framework of 8 *Del. C.* § 145: "[S]ection 145(e), consistent with the holdings in *Cochran* and

*Fasciana*, is best read as limiting a corporation's power to indemnify fees on fees to those situations where success is achieved on the underlying claim." *Id.* at 226. Finally, the court explained, such provisions also "contravene[] notions of sound public policy": "The law should not encourage directors and officers to bring non-meritorious indemnification claims against the corporation, and the provision at issue here clearly creates a perverse incentive to do so."[14] The *Levy* court's holding has been followed in subsequent cases,[15]

---

[14] *Id.* at 226–27.

[15] *See, e.g.*, *Manche v. MVMT Labs, Inc.*, C.A. No. 2025-1407-CDW, Order Denying Pet'r's Mot. for Recons. of Magistrate's Dec. 11, 2025 Ltr. Decision, Dkt. 16 (applying *Levy* and declining to enforce an unconditional fees-on-fees provision identical to Section 7(d)); *Nielsen v. EBTH, Inc.*, 2019 WL 4755865, at *15 (Del. Ch. Sept. 30, 2019) (discussing *Levy* and referring to an unconditional fees-on-fees provision identical to Section 7(d) as "too broad"); *Lieberman v. Electrolyte Ozone, Inc.*, 2015 WL 5135460, at *7 (Del. Ch. Aug. 31, 2015) ("Unfortunately for Plaintiffs, Delaware corporations lack the contractual power to compensate a party for fees and expenses incurred while pursuing a failed underlying claim.") (citing *Levy*); *Schoon v. Troy Corp.*, 948 A.2d 1157, 1176 (Del. Ch. 2008) (rejecting demand for payment of the full amount of fees and expenses incurred pursuant to bylaw provision granting indemnification "if successful in whole or in part" and citing *Levy*). The court also declined to allow unconditional fees-on-fees in *Pontone v. Milso Industries Corporation*, without citation to *Levy*. 2014 WL 2439973, at *12–14 (Del. Ch. May 29, 2014) (discussing *Fasciana*, 829 A.2d at 184, and *Schoon*, 948 A.2d at 1176). Also, in *Rhodes v. bioMérieux, Inc.*, the plaintiff, represented by the same law firm as plaintiffs here, made the same argument in his summary judgment opening brief regarding the scope of Section 7(d). *Compare* C.A. No. 2023-1079-BWD, Dkt. 18 at 30–31, *with* C.A. No. 2025-0426-CDW, Pls.' Opening Br. in Support of Their Mot. for Summ. J. at 14, Dkt. 30. He did not address unconditional fees-on-fees in his reply brief or at oral argument, effectively abandoning the point. *See* C.A. No. 2023-1079-BWD, Dkts. 25, 36. The court

and I follow it here, leaving for another day and another case the question of when, if ever, an unconditional fees-on-fees provision is enforceable according to its terms.

***Confidentiality Stipulation* (¶ 26).**  I accept the parties' proposal to dispense with a separate confidentiality order but have added language to confirm that the requirements of Court of Chancery Rule 5.1 apply to any documents filed with the court reflecting or including information derived from the invoices.

***Modifications to the Order* (¶ 27).**  I have modified the first sentence of this paragraph to clarify that the parties' ability to modify time periods in the *Fitracks* Order does not include the "[n]ot more frequently than quarterly" time period in paragraph 19.  In light of my ruling with regard to paragraph 23, I agree with defendants' proposal to eliminate the second sentence.

***The Validity of the Indemnification Agreements* (¶ 28).**  The proposed additional language in paragraph 28(ii) is redundant with the language in paragraph 28(i), but plaintiffs say they do not object to its inclusion, so I have added it to the *Fitracks* Order.

---

awarded the plaintiff fees-on-fees proportionate to his success. *See* 2024 WL 669034, at *15 (Del. Ch. Feb. 19, 2024).

This is a Report under Court of Chancery Rule 144(b)(1). Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a final report in this case.

Very truly yours,

/s/ *Christian Douglas Wright*

Magistrate in Chancery

CDW/slk